IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ARMANI D. JACKSON,

                                        Plaintiff,                          OPINION and ORDER

        v.
                                                                            24-cv-394-jdp
RICHARD SEDEVIC,

                                        Defendant.

---

Plaintiff Armani D. Jackson, proceeding without counsel, is currently a prisoner at Green Bay Correctional Institution. Jackson alleges that when he was at Columbia Correctional Institution, defendant correctional sergeant Richard Sedevic used excessive force against him by slamming his arm in his cell's trap door. I granted Jackson leave to proceed on a claim under the Eighth Amendment to the United States Constitution. Dkt. 6.

Sedevic moves for summary judgment, contending that he used appropriate force in response to Jackson refusing to remove his arm from the trap and swiping his hand at Sedevic. After considering video footage of the events and other evidence, I will grant summary judgment to Sedevic and close the case.

PRELIMINARY MATTER

Jackson filed a motion to compel discovery of various prison documents related to his claim, Dkt. 17. Defendant Sedevic responded to this motion by stating that he followed up by sending Jackson those documents, with the exception of medical records subject to a pending request for Jackson to authorize their release. Dkt. 18. Jackson didn't file a reply or otherwise object to Sedevic's response. I will deny Jackson's motion to compel as moot.

UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted. I draw them from the parties' proposed findings of fact and video footage of the incident. There are two videos: (1) footage from defendant Sedevic's body camera that captures part of the events and includes audio, Dkt. 24-2 (placeholder entry for that video); and (2) footage from a hallway camera that captures the entire sequence of events but does not include audio, Dkt. 24-3 (placeholder entry for that video). Where a party's proposed finding is clearly contradicted by the video footage, I will credit the footage and disregard that proposed finding. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

On January 19, 2024, plaintiff Armani Jackson was in the custody of the Wisconsin Department of Corrections as an inmate at Columbia Correctional Institution. Defendant Richard Sedevic was employed as a sergeant at Columbia Correctional Institution.

At about 2:44 p.m. that day, Sedevic was collecting food trays from inmates. Cells on Jackson's unit contained a food tray slot. The slot had a trap door that opened and closed, allowing a tray to pass in and out of the cell before or after meal times.

When Sedevic approached Jackson's cell, Jackson stuck his hand out of the trap and into the hallway. They spoke for a few minutes; there isn't body camera footage for the beginning of the conversation so there is no audio of it.

Jackson told Sedevic that he was holding his trap open because he wanted to speak with a supervisor about a personal property item. Sedevic told Jackson to take his hand out of the trap and Jackson refused. Sedevic told Jackson to pull his hand in or that Sedevic would do it for him. Jackson states that Sedevic then told him, "I'm lucky that just my trap was open because if my door was open instead and I refused to lock in after he had given me a directive

to, he would've just kicked my ass and that there really wouldn't be anything I could do about it." Dkt. 30 (Jackson's proposed findings of fact), ¶ 5. Sedevic disputes this and states that the video "speaks for itself." But Jackson says that Sedevic made this statement before his body camera was switched on, so the video does not disprove this proposed finding. For purposes of summary judgment, I will accept Jackson's proposed finding.

There is body camera footage and accompanying audio starting a minute or two into the conversation. In this part of their conversation (Dkt. 24-2, at 2:46:30–2:47:14 p.m.[1]), Jackson tells Sedevic, "I'm not going to do anything. I don't give a fuck . . . I don't have to listen to you. Who is you?" Sedevic responded "I'm the sergeant that's telling you to put your hand in." Jackson said that he didn't have to listen to Sedevic. Sedevic responded, "O.K., then you're gonna get nothing." The parties talk over each other, but I can make out Jackson saying, "We can do this the hard way," with Sedevic responding, "Yeah, we can do. I don't care either." Jackson told Sedevic to "go get the white shirt," which I take to mean a supervisor. Jackson added, "You gave me a directive, I formally refused, and this is where we at" and suggested that Sedevic write him a conduct report. Sedevic responded, "O.K." Jackson stated that he needed "an appeal form and [unintelligible]." Sedevic said "Yup you're not getting that" and "You wanna play your little game, you're not going to get anything." Jackson did not remove his arm from the trap.

Sedevic turned away from Jackson's cell and for about the next minute continued collecting food trays from other inmates. According to Jackson, he began "play[ing]" with a bolt on the outside of the trap. Dkt. 30, ¶ 12. Sedevic heard this and returned to Jackson's cell,

---

[1] Because the two videos are synched to the same time stamps, I will cite to the time stamps in each video rather than to the elapsed times.

saying, "We can leave this alone." Dkt. 24-2, at 2:48:20 p.m. Both the body camera and hallway video show that as Sedevic reached for the trap, Jackson swatted his hand in Sedevic's direction in what appeared to be an attempt to push Sedevic's arm away. *Id.* and Dkt. 24-3, at 2:48:22 p.m.

What follows is captured on one or both videos from 2:48:22–2:51:43 p.m. Sedevic responded by grabbing Jackson's arm, with one hand on Jackson's hand and his other on Jackson's wrist, and pulling most of Jackson's arm out of the trap. Sedevic states that this was a hold that he was trained to use. Sedevic repeatedly stated that Jackson wasn't going to grab him and asking if Jackson was done.[2] Sedevic then held Jackson's hand with one hand while he used his other hand to radio for help, stating that an inmate tried to assault him. Jackson appeared to be sitting or kneeling on the floor with Sedevic pulling Jackson's right arm slightly behind Jackson's body. After about 25 seconds of holding Jackson, Sedevic re-grasped Jackson's hand and wrist with both hands and pulled harder on Jackson's arm, holding him for about another 25 seconds until help came. Sedevic says that he used the minimum necessary force to restrain Jackson. Jackson disputes this, saying that "after approximately 15–20 seconds, Mr. Sedevic starts to excessively yank, pull, and bend my arm using both of his arms and entire body weight as he's leaning backwards pulling my entire arm without any provocation or reason at all." Dkt. 30, ¶ 18. Another staffer handcuffed Jackson. The video doesn't show precisely when Sedevic let go of Jackson; Sedevic held his arm for around a minute to a minute and a half in total.

---

[2] The parties dispute how Jackson responded, with Sedevic saying that Jackson responded with "alright, you right" and Jackson stating, "Naw I ain't." The audio from the body camera video appears to support Sedevic's version, but it isn't so clear that I can accept Sedevic's version at summary judgment. In any event the dispute is immaterial.

Jackson was removed from his cell and placed on "controlled separation" status. Jackson was seen by a nurse that day for Jackson's complaint of arm pain. The nurse noted that Jackson had a bruise on his deltoid region but otherwise noted no injury. The nurse recommended that Jackson use ice. Jackson says that he had a bruise "covering nearly half [his] arm" and that he "suffered a lot of pain even several weeks after the incident." Dkt. 30, ¶¶ 20–21.

In a disciplinary proceeding, Jackson was found guilty of disobeying orders and disruptive conduct, but was found not guilty of assaulting an employee.

Jackson was later seen by a physical therapist. Jackson continued to report shoulder pain. The therapist assessed Jackson as having myofascial pain and range-of-motion deficits and hypothesized whether Jackson had suffered a mild biceps tendon strain.

I will discuss additional facts as they are relevant to the analysis.

ANALYSIS

Jackson brings an Eighth Amendment excessive force claim against defendant Sedevic. To establish a claim for excessive force based on a prison official's use of force, the prisoner must show that the officer applied force "'maliciously and sadistically for the very purpose of causing harm,'" rather than "'in a good faith effort to maintain or restore discipline.'" *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). Even if a prison official's use of force causes a prisoner objectively serious injury, the use of force violates the Eighth Amendment only if the official used force maliciously and sadistically for the purpose of harming the prisoner. *Harper v. Albert*, 400 F.3d 1052, 1065 (7th Cir. 2005). Courts should consider all the circumstances, including "the need for force, the amount of force used, the threat reasonably perceived by the officer, efforts made to temper the severity of the

5

force, and the extent of the injury caused by the force." *See Lewis v. Downey*, 581 F.3d 467, 477 (7th Cir. 2009).

The video evidence resolves most of the factual disputes between the parties but there is still room for interpretation regarding exactly how hard Sedevic pulled on Jackson's arm. And Jackson says that he suffered significant pain after the incident even though his medical records suggest he suffered no more than a mild biceps tendon strain. Nonetheless, even drawing all reasonable inferences in Jackson's favor, no reasonable jury could conclude that Sedevic used excessive force in violation of the Eighth Amendment.

Sedevic compares this case to other cases in which courts have granted summary judgment to correctional officers who used force against inmates who put their arm through the trap and refused to remove it. *White v. Matti*, 58 Fed. Appx. 636, 638 (7th Cir. 2002) (affirming grant of summary judgment to officers who beat inmate's hand with plastic medication box after inmate put his arm through the trap and wouldn't remove it); *Outlaw v. Newkirk*, 259 F.3d 833, 834 (7th Cir. 2001) (affirming grant of summary judgment to officers who closed food port door on inmate's hand while it was in the food port holding garbage); *Newsom v. Biederwolf*, No. 19-526, 2021 WL 633361 (E.D. Wis. Feb. 18, 2021) (granting summary judgment to officers who attempted to close trap door against inmate's hand after inmate jammed it with paper and stopped their attempt when inmate said "ow"). These cases suggest that it does not violate the Eighth Amendment to use a certain amount of force to restore discipline when an inmate refuses to remove his arm from a trap.

Even assuming that Sedevic used greater force than that applied in the above cases, the only reasonable inference is that Sedevic acted in a good-faith effort to restore discipline—by subduing Jackson as he waited for other staff to remove Jackson from his cell and take him to

controlled separation status—rather than for the purpose of harming Jackson. Jackson had not only disobeyed Sedevic's order to pull his arm out of the trap, but he also appeared to brush away Sedevic's hand as he approached the cell to stop Jackson from manipulating it. Jackson says that he didn't actually make contact with Sedevic and that he wasn't trying to touch him. But this claim depends on Sedevic's subjective understanding of Jackson's actions, and it is clear from Sedevic's statements in the video that he perceived a threat from Jackson trying to make unwanted physical contact with him. Jackson's later acquittal on the assault charge (which under the circumstances would have required "bodily injury or harm" to Sedevic, *see* Wis. Admin. Code § DOC 303.13) doesn't materially affect that issue.

I take Jackson to be arguing that the second part of Sedevic's force, in which he re-grasped Jackson's arm before pulling harder on it, was particularly excessive, and that Sedevic had earlier made a comment about "kicking his ass." But even given Sedevic's earlier intemperate remark, nothing in the videos suggests that Sedevic intentionally wrenched Jackson's arm for the purpose of harming him. Sedevic's pulling of Jackson's arm for a legitimate security purpose does not violate the Eighth Amendment even if the amount of force was marginally unreasonable given the circumstances. *See Whitley v. Albers*, 475 U.S. at 319 ("The infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense."); *Guitron v. Paul,* 675 F.3d 1044, 1046 (7th Cir. 2012) ("Custodians must be able to handle, sometimes manhandle, their charges, if a building crammed with disgruntled people who disdain authority . . . is to be manageable.").

Because no reasonable jury could conclude that Sedevic violated Jackson's Eighth Amendment rights, I will grant Sedevic's motion for summary judgment and dismiss the case.[3]

## ORDER

IT IS ORDERED that:

1. Plaintiff's motion to compel discovery, Dkt. 17, is DENIED as moot.

2. Defendant's motion for summary judgment, Dkt. 20, is GRANTED.

3. The clerk of court is directed to enter judgment accordingly and close the case.

Entered December 2, 2025.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge

---

[3] Defendant Sedevic also contends that he is entitled to qualified immunity on Jackson's Eighth Amendment claim. Because I am dismissing this claim on the merits, I need not consider Sedevic's qualified immunity argument.